UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IHAB MASALMANI,

                    Petitioner,

v.                                    Case No. 14-cv-13001
                                    Honorable Gershwin A. Drain

WILLIE SMITH,

                    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

Ihab Masalmani, ("Petitioner"), confined at the Ionia Correctional Facility in Ionia, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Mr. Masalmani challenges his conviction out of the Macomb County Circuit Court for eighteen different charges arising out of three separate cases that were consolidated for trial. Mr. Masalmani was convicted in Case # 09-004832-FC of several counts of armed robbery, one count of kidnapping, one count of bank robbery, and four counts of felony-firearm. In Case # 09-005144-FC, Mr. Masalmani was convicted of carjacking, receiving and concealing firearms, and felony-firearm. In Case # 09-005244-FC, Mr. Masalmani was convicted of first-degree felony murder, carjacking, conspiracy to commit carjacking, kidnapping, conspiracy to commit kidnapping, larceny from a person, and felony firearm. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## II. BACKGROUND

Mr. Masalmani was convicted of the above charges following a jury trial in the Macomb County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from three criminal episodes that occurred during a three-day crime spree from August 9, 2009, until defendant's arrest on August 11, 2009. The prosecutor's theory was that on the afternoon of August 9, 2009, defendant, acting in concert with codefendant Robert Taylor, both of whom were juveniles, carjacked and abducted Matt Landry from outside an Eastpointe restaurant, held Landry captive for several hours, stole his money by using his ATM card, and later murdered him by shooting him in the head and leaving his body at an abandoned burnt-out house in a drug-infested neighborhood. The next day, defendant, using Landry's vehicle and now acting alone, robbed a Flagstar Bank, during which he pointed a gun and threatened several people inside the bank, temporarily abducted customer Sarah Maynard, and stole money from both the bank and a customer before fleeing in Landry's vehicle. Defendant continued his crime spree on August 11, 2009, by carjacking David Hassroune at gunpoint in a Walmart parking lot before being arrested. Surveillance videotape from several locations depicted defendant committing many of the offenses. At trial, the defense focused on contesting the charges that defendant shot Landry and kidnapped Maynard.

*People v. Masalmani*, No. 301376, 2013 WL 1137181, at *2 (Mich. Ct. App. Mar. 19, 2013) *appeal denied*, 495 Mich. 853, 835 N.W.2d 592 (2013).

Mr. Masalmani's convictions were affirmed on appeal, although the Michigan Court of Appeals vacated petitioner's mandatory nonparolable life sentence and remanded for re-sentencing due to the fact that he was a juvenile when he committed the murder. *See People v. Masalmani*, 495 Mich. 853, 835 N.W.2d 592, 593 (2013). Here, Mr. Masalmani seeks a writ of habeas corpus on the following grounds:

> I. Mr. Masalmani's conviction for first-degree murder should be vacated because the prosecution failed to present evidence sufficient to sustain the conviction.

II. The prosecutor engaged in misconduct by vouching for a key witness who happened to be a jailhouse snitch and denigrating Mr. Masalmani, thus depriving him of his constitutional right to a fair trial.

III. Mr. Masalmani was denied a fair trial and effective assistance of counsel by his attorney's failure to object to the prosecutor's misconduct.

*See* Dkt. No. 1 at 4, 5, 7.

### III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the following standard of review is imposed for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

## IV. LEGAL ANALYSIS

### A. Claim # 1. The sufficiency of evidence claim.

Mr. Masalmani first contends that there was insufficient evidence to convict him of the most serious offense, first-degree felony murder. Petitioner claims that the evidence was insufficient to establish his identity as the person who shot the victim and further argues that there was insufficient evidence to establish the requisite element of malice.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* In fact, the *Jackson* standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (internal quotation marks omitted)). Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;

(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);

(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich.

750, 759; 597 N.W. 2d 130 (1999)).

Mr. Masalmani first claims that there was insufficient evidence to establish his identity as

the shooter.  The Michigan Court of Appeals rejected this claim:

> Defendant asserts that the prosecution failed to present credible evidence that he was the person who killed Landry.  We disagree.  Although there were no witnesses to the actual shooting, defendant's identity as the killer properly could be established through circumstantial evidence.  The deferential standard of review "is the same whether the evidence is direct or circumstantial," and it is well established that "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew.
>
> The defense did not dispute the evidence that defendant carjacked and kidnapped Landry outside a Quiznos restaurant in Eastpointe on the afternoon of August 9, 2009.  Two witnesses, Lawrence Wata and Carol Santangelo, observed defendant and codefendant Taylor acting aggressively toward Landry during the initial contact.  While Taylor, who Wata believed was armed with a weapon, acted as a lookout, defendant grabbed Landry by the neck, dragged him to the rear of his vehicle, and attempted to push Landry in the trunk.  Defendant then forced Landry back inside the car, punched Landry, who had his hands up, and signaled for Taylor to join them.  Defendant drove away in Landry's vehicle with both Landry and Taylor inside.  Evidence was presented that over the next several hours defendant continued to drive Landry's vehicle, hold Landry captive, and steal money from Landry's bank account.
>
> About an hour after defendant abducted Landry, defendant was captured on videotape using Landry's ATM card at a gas station on the east side of Detroit, making three separate withdrawals, totaling more than $300.  Soon thereafter, in a Detroit neighborhood near the gas station, a resident viewed defendant and

another male standing behind Landry's Honda and looking into the trunk. There was no sign of Landry. However, a cigarette butt later found in the truck (sic) revealed the presence of Landry's DNA. Defendant was thereafter captured on another Detroit area gas station security video, still driving Landry's green Honda, with Taylor and two women, and no sighting of Landry. Defendant was also captured on an Eastland mall clothing store's videotape, shopping with two other men and spending a large sum of money.

Seven hours after Landry was abducted, defendant and Taylor drove Landry's Honda to a heavily drug-infested area in Detroit where they parked outside a vacant, burnt-out drug house at 14703 Maddelein. According to Frederick Singleton, Taylor was driving the vehicle and defendant was in the back seat with Landry. Through Singleton, defendant arranged to purchase crack cocaine, after which defendant, Taylor, and Landry went inside the drug house. As defendant smoked the crack cocaine inside the house, Landry, who Singleton described as silent and "out of place," sat motionless on the couch next to Taylor. When Singleton spoke to Landry, defendant referred to Landry as his "home boy" and stated, "He doesn't get high, don't worry about him." Defendant purchased and smoked another round of crack cocaine and, at one point, two males came to the house and gave defendant a gas can. According to Singleton, after defendant smoked the second round of crack cocaine, he began to "tweak," which Singleton described as becoming "very paranoid," "antsy," and "amped up." Landry was last seen alive at about 10:00 p.m. inside the vacant house with defendant and Taylor. The next day, defendant used Landry's Honda to commit a bank robbery. Defendant was armed during that offense, attempted to kidnap a patron, and threatened to kill the people inside the bank. Two days later, Landry's significantly decomposed body was found inside a vacant, burnt-out house at 14711 Maddelein, only a few houses from the location where Landry was last seen alive with defendant and Taylor. Landry had been shot in the back of the head and the bullet path was consistent with Landry having been shot while kneeling.

Viewed in a light most favorable to the prosecution, the evidence that (1) defendant, in conjunction with Taylor, brazenly and forcibly carjacked and kidnapped Landry, (2) defendant held Landry captive for at least seven hours, during which time he dragged Landry by the neck, punched Landry, stole money from Landry's bank account, and took Landry to a drug house where defendant smoked cracked cocaine to the point of becoming paranoid and amped up, (3) Landry was last seen alive with defendant and Taylor at the drug house, (4) Landry was shot in the back of the head, (5) Landry's body was found on the same street just a few houses from the location where he was last seen alive with defendant and Taylor, at which time defendant was described as "antsy," "paranoid," and "amped up," and (6) that the day after Landry was last seen alive, defendant was still in possession of Landry's car, which he used to commit another violent crime while armed with a firearm, was sufficient to enable a

rational trier of fact to determine beyond a reasonable doubt that defendant was the person who killed Landry during the criminal episode.

Although defendant argues that there were other people at the vacant house who could have killed Landry, and that Singleton's testimony was not credible, these challenges are related to the weight of the evidence rather than its sufficiency. These same challenges were presented to the jury during opening statement, cross-examination, and closing argument. This Court may not interfere with the jury's role of determining issues of weight and credibility.

*Masalmani*, 2013 WL 1137181, at *3-4 (internal citations omitted).

In the present case, there was strong circumstantial evidence which established petitioner's identity as the person who shot and killed the victim. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *See Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000) (internal quotations omitted). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

The evidence showed that Mr. Masalmani and his co-defendant carjacked and kidnapped Mr. Landry and held him captive for several hours. Mr. Masalmani punched Mr. Landry and took money from his bank account. Petitioner took the murder victim to a crack house and smoked crack cocaine in front of him. Mr. Landry was last seen alive with Mr. Masalmani and the co-defendant. The murder victim's body was discovered on the same street a few houses away from where the victim was last seen alive with Mr. Masalmani and the co-defendant. All of this circumstantial evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Mr. Masalmani was involved in the shooting of Mr. Landry. *See Spalla v. Foltz,* 788 F. 2d 400, 402-03 (6th Cir. 1986) (conviction of second-degree murder was supported by sufficient circumstantial evidence, including witnesses' description of getaway car, other witnesses' testimony placing defendant in car with same general description and location of

cornfield only 15 minutes from victim's house, where defendant and victim had left together)*;* *Scott v. Perini,* 662 F. 2d 428, 434-35 (6th Cir. 1981) (circumstantial evidence supported habeas petitioner's conviction for second-degree murder, where some of petitioner's statements to the police placed petitioner, the co-defendant, and the victim together at the time of the murder, and murder took place during a time frame from which the jury could conclude that petitioner, the co-defendant, and the victim were together).

The fact that Mr. Masalmani was in possession of the murder victim's car the day after the murder was also sufficient to support petitioner's conviction for felony murder. *See Matthews v. Abramajtys,* 319 F. 3d at 789 (evidence was sufficient to support petitioner's convictions for felony murder, where petitioner had possession of murder victim's diamond ring, petitioner knew the murder victims, and a witness testified that petitioner was present near the crime scene before and after the time of the murders).

Mr. Masalmani also contends that there was insufficient evidence of malice to sustain his conviction for first-degree felony murder.  The Michigan Court of Appeals rejected this claim, finding that evidence that the victim had been kidnapped, held captive for several hours, "shot in the back of his head a manner consistent with an execution, after which his body was left inside a vacant, burnt-out house in a highly drug-infested area" was sufficient evidence for the jury to conclude that petitioner acted with malicious intent. *Masalmani*, 2013 WL 1137181, at *5.

The Michigan Supreme Court has indicated that: "A jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *see also Carines,* 460 Mich. at 759 (internal citation omitted).  "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.  A rational trier of fact in this case could infer malice from the victim

being shot in the back of the head, so as to support Mr. Masalmani's first-degree murder conviction. *See People v. Hawkins,* 80 Mich. App. 481, 486, n. 3; 264 N.W. 2d 33 (1978) (since victim was shot in the back of the head at close range with a shotgun, jury could infer that he was murdered with malice aforethought).  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claims # 2 and # 3.  The prosecutorial misconduct/ineffective assistance of counsel claims.**

The Court discusses Mr. Masalmani's second and third claims together because they are interrelated.  In his second claim, Mr. Masalmani argues that he was denied a fair trial because of prosecutorial misconduct.  In his third claim, petitioner argues that trial counsel was ineffective for failing to object to the alleged misconduct. [1]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim

---

[1] Respondent contends that Mr. Masalmani's prosecutorial misconduct claims are procedurally defaulted, because he failed to object to them at trial and the Michigan Court of Appeals relied on his failure to reject petitioner's prosecutorial misconduct claims.  Mr. Masalmani claims that his trial counsel was ineffective for failing to object to the alleged misconduct.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted misconduct claims, it would be easier to consider the merits of these claims together. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S. Ct., at 786–87).

    Mr. Masalmani first contends that the prosecutor denigrated his character by referring to petitioner in his closing argument as the gangster character "Tony Montana" from the movie *Scarface.* The Michigan Court of Appeals rejected petitioner's claim:

> During trial, Hassroune, the Walmart carjacking victim, testified that he observed several tattoos on defendant's hands while observing defendant holding a gun. Defendant had the word "Bad" tattooed on his left hand, and the word "Guy" tattooed on his right hand, and the number "5" was tattooed on each of his ten knuckles. The jury was shown photographs of defendant's hands depicting the tattoos. Police Detective Brian McKenzie testified that he asked defendant about the tattoos as he was photographing defendant's hands. Defendant stated that the tattoos "were a reference to the movie Scarface." Thus, the connection to "bad guy" Tony Montana from the movie *Scarface* originated from defendant himself, as opposed to the prosecutor making a baseless reference. Viewed in this context, the prosecutor's remarks do not rise to the level of plain error.
>
> Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. And even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights.

*Masalmani*, 2013 WL 1137181, at * 5-6 (internal citations omitted).

    In this case, the prosecutor's reference to Mr. Masalmani as "Tony Montana" was not so egregious as to render petitioner's trial fundamentally unfair. *See U.S. v. Russo,* 302 F. 3d 37, 47 (2nd Cir. 2002) (prosecution's references to defendants as "powerful gangsters," "mafioso," and "mob boss," in opening and closing statements were not so substantially prejudicial as to be flagrant abuse); *See also Toler v. McGinnis,* 23 Fed. Appx. 259, 367-70 (6th Cir. 2001)(prosecutor's alleged misconduct, in implying that petitioner was a member of the Mexican

Mafia and a gang member and that his brothers were drug traffickers and suspected murderers, did not deprive petitioner of due process and thus did not warrant federal habeas relief). Habeas relief, in fact, has been rejected for far more derogatory references to defendants by prosecutors. *See, e.g.*, *Farmer v. Hofbauer,* 1 Fed. Appx. 372, 381 (6th Cir. 2001) (prosecutor's reference comparing petitioner to Hitler did not merit habeas relief); *see also*, *e.g.*, *Byrd v. Collins,* 209 F.3d 486, 536 (6th Cir. 2000) (prosecutor's use of "predator" to describe murder defendant did not deprive petitioner of a fair trial).

Mr. Masalmani next claims that the prosecutor improperly vouched for the credibility of Frederick Singleton, by stating that Singleton was "a very credible witness." A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999) (internal citations omitted).

It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F. 3d at 537, 537 n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002). Petitioner is not

entitled to habeas relief on this claim because the prosecutor's comment was brief and isolated. An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006). Secondly, even if this statement amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (Tr. 9/30/10, p. 161). This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537. Mr. Masalmani is not entitled to relief on his second claim.

The Court will also reject petitioner's third claim. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of

counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive Mr. Masalmani of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his third claim.

### V. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Mr. Masalmani a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny Mr. Masalmani leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

Based upon the foregoing, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS HERBEY ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

SO ORDERED.

Dated: January 9, 2015

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge